Case number 16-5284. United States of America, care of United States Attorney's Office v. $17,900.00 and the United States currency, Joyce Copeland et al. appellant. Ms. Lazer for the appellant, Mr. Brown for the appellate, USA. Good morning. Good morning and may it please the Court, I am Crystal Lazer from Kirkland & Ellis on behalf of the claimants, Angela Rodriguez and Joyce Copeland. I have reserved four minutes for rebuttal. This is a simple case of incorrect application of the summary judgment standard. The District Court below granted summary judgment on the ground that claimants lacked Article III standing to challenge the forfeiture of property that they own. By rejecting uncontroverted evidence of claimants' ownership of the funds as, and I quote, simply defying common sense, unlikely, improbable, and exceeding the bounds of rational acceptance, the District Court made an improper credibility determination that was not appropriate at the summary judgment stage. Looking at the facts of this case, it was clear that the claimants had provided sufficient evidence to preclude summary judgment on the issue of ownership. So they had their statements and their references in your brief to the fact that they had provided other documents to the government during the administrative process. One was the bank account. What were some of the other documents? There were many documents provided to the government. Like what? This included, for example, receipts for withdrawals of funds from their bank accounts, bank statements that indicated the date upon which funds were deposited into those accounts, including the rapid refund advance of their tax refunds, statements indicating withdrawal from their retirement funds, in fact, a closing of that account. There were receipts for the purchase of the mink coats that they sold and receipts for alterations of those coats immediately prior to the date that they claimed to have sold them. In short, there were a number of pieces of evidence, and many of those pieces of evidence were admitted by the government in their briefing. There was a table in the government's briefing below that set out precisely which documentation provided what dollar amount of the funds. Furthermore, there's other evidence here that supports or corroborates their sworn statements. In addition to the detailed sworn statements they provided, the complaint makes clear that they are not strangers to the funds. The funds were found in their son's backpack, which had their son's name on it, or, excuse me, in papers that were inside the backpack, and they reached out to police shortly after it was seized. Does the fact that the claimants themselves were not in possession of the property when it was seized affect the nature of what they would have to show, what they do have to show, in order to have standing and be the claimants? Although there are cases that say that there must be an assertion of ownership plus some evidence of ownership, it's clear that from the case law... Do you think that's the right standard, by the way? We do believe that's the correct... That's what the other circuits, most of them, have felt, right? That there has to be ownership combined with some evidence of ownership, right? Correct, and we would assert that the case law in this circuit makes clear that a sworn affidavit that provides details rather than your assertions, as is the case here, would constitute some evidence. Of course, the government admits that a sworn affidavit is competent evidence of summary judgment. So possession, in your view, is irrelevant? Possession is not necessary. There are cases that show that possession further corroborates those statements, but that's not necessary. So it's enough if I swear that that's my money? If it was simply a raw statement, I swear that that's my money, that would not... And I use some tax refunds and I withdrew some money from my bank account? Here, there's far more than that. To answer your question, though, a simple assertion that that's my money would not be enough. That would be under the mere assertion standards. If you start providing more evidence, such as receipts for how the funds were sourced, that brings you further towards the line. Here, it certainly crossed the line of some evidence and more than a conclusory statement when you provide not only the detail of how those funds were sourced, but also details as to the travel with those funds, the dates of that travel, where they were traveling to, and how the funds were traveling back. So the district court's point was no reasonable jury could credit a claimant's claim. That's inappropriate. Taking what they said themselves, for instance, what they did with the money in North Carolina, and yet they asked the very person they had no faith in to bring the money to them in New York. I mean, they're talking out of both sides of their mouths, so to speak. The decision may have been one that's different from one that you or I might have made. It may have even been a foolish decision. But that doesn't make it a decision that is so unlikely. But that's what the judge was saying, because he was questioning about that. I don't know if you personally, but he was questioning about that, that he didn't understand that poorer people don't always deal in credit cards and fancy transactions. And he said, well, these people had money markets. They had bank accounts, et cetera. So I don't think he outlawed the notion that it could be reasonable to trade in cash. But there was just nothing, he said. And then you have these contradictory, internally inconsistent statements. It's not internally inconsistent when you look at the full context. If you look through the interrogatories, it explains why they left the funds in that location at that time and why they then asked him to bring it back. Specifically, they stated that they – The judge took their statements at face value and said they didn't want to tell him they left it because they were concerned he might take some of it. And yet, later, they asked him to bring it from North Carolina to New York, the very person they didn't trust with the money. That was an improper credibility determination, because if you look at the – That's what your client's statement said. It wasn't – If you look at the full context, it states that they believed that they were going to return shortly to North Carolina. And, of course, the travel with currency is not necessarily without its risks. They might not have wanted to bring the funds back to New York when they were expecting to immediately return to North Carolina. When, post-surgery, she realized that she had to stay in New York for a longer period of time and her son was returning, then she asked to bring the funds back up. But if you look at the full context, there are explanations for this, and it was improper on a summary judgment standard for the court to deny that. How would you – Maybe just pursuing the question Judge Rogers asked, the government makes a lot of this First Circuit case, United States versus, what is it, $9 million or something? About $8 million, yeah. $8 million, okay. Well, the district court there said that the claim there, that he was going to go back and get the money, quote, defies common sense. And that's sort of what the district court did here, too, right? The district court said, look, this just defies common sense. So what's your best way to – because the district court there was not, in the First Circuit, was not offending the rules of summary judgment because the district court can reject perfectly admissible evidence if it's just completely contrary to – just makes no sense, right? You can do that. Specifically that it's not the standard simply that they disagree with. And I should note that in the $8 million case, the court specifically noted that the contention of ownership as to the bales of currency that were thrown into the ocean was contradicted by other evidence on the record. So that's the difference here. Your view is if you take the standard from the other circuits, an assertion of possession and evidence, there's no evidence to contradict any of that. Precisely. That's your bottom line, right? Well, there are three buckets under which it could possibly – one of which is when it's contradicted. That's not the case here. There's no evidence at all in the record that the government put forward. The other is if it's a mere assertion. This is not merely a statement where we said we own the property. And the last is the Lombardo case, which is the situation where there is entirely impossible allegations. The court made clear there this is not a situation where the allegations are merely unlikely or improbable but are so implausible as to be frivolous. This is certainly not a case of frivolous assertions. Okay. All right. So I take it it's your view that even though the claimants here believe that they will be able to produce documentation of various aspects of the transactions that they narrated in their declaration, it's sufficient at the effectively summary judgment stage simply to describe that in a sworn declaration. Correct. It is sufficient at the summary judgment stage to simply describe it in a sworn declaration. However, note that there are also corroborating statements such as the admission from the government in the complaint as to the way that the currency was being transported at the time that it was seized, in particular that it was on a train headed to New York, which is where claimants lived, and that it was in the backpack of their son with his name on it. These are all facts that further corroborate their ownership of the funds. It's not merely a case of a detailed affidavit, although that would be sufficient under the case law. And he didn't know about it even though it was in the backpack he was carrying because they said just take that paper bag and put it in the backpack and come. Don't look at it. And he, being a good, obedient child, did not look? It's not in the record whether or not he looked at it. Well, he said when he was confronted by the police that he had no awareness of having any currency, right? Correct. However, it's certainly plausible that if your parents say, please bring this shopping bag to me, you could think it's newspapers, you could think it's anything, you might not be very interested in something that your parents put in a bag and say, you know, we left this there, could you bring that with us? Okay, sure, I'll just stuff it in my backpack and take it. Sure, it's 100 pounds of cocaine. Well, that's not what was the case here. No, no, but that's my point. You better look and see what it is you're being asked to transport. There are many people that do not look to see what they're being asked to transport. I'm sure it generates many cases before the court. It's certainly not an implausible or impossible allegation, especially at the summary judgment stage. I should note with my last remaining seconds here that in the forfeiture cases in particular, it is very important that the threshold for standing is one that is very low. Recall that the Supreme Court stated in Dengan that the court should not allow recourse to rules that would foreclose consideration on the merits. We already have circuit precedent on that, right? In this circuit, it has to be colorable. I'm sorry? It's colorable, right? That's what we've said. It's not a heavy burden, but it has to be colorable, correct? Correct. It's a low threshold. It's a low threshold, so we've already said that. Correct. And in compliance with this court's prior precedent, we would say that there's certainly a detail affidavit like this that's corroborated by statements in the complaint is sufficient to satisfy that low threshold. Okay. All right, thank you. Thank you. Good morning. Good morning, and may it please the Court. Christopher Brown for the government. The claimants have cited no case in which a party affidavit standing by itself without something more like a possessory interest that is undisputed has been deemed sufficient to carry their burden of proof by preponderance of the evidence on motion for summary judgment. And here we don't just have a party affidavit. Let me just ask you about the standard. I want to ask you the same question I asked Counsel for appellate, which is do you agree with these other circuits, the First, Fifth, Seventh, Ninth, that the standard is there must be an assertion of ownership combined with some evidence of ownership. Is that the right standard? Yes, we agree with that standard. So you accept that standard. Okay. Assuming the nature of the interest asserted in the property is ownership, and yes. Yeah, okay. So we've got an agreement on both sides here that that's the standard this circuit should adopt. So given that, tell us, we clearly have here, quote, an assertion of ownership in many respects, and we have evidence of ownership in terms of their answers to the interrogatories. So given that, and given the summary judgment standard, which is, you know, this is admissible evidence. Courts can't make credibility determinations at this stage. Tell us why this doesn't survive our summary judgment standard in this court. Well, under Anderson, to survive a motion for summary judgment, you don't just provide some evidence. That evidence has to be sufficiently probative for a reasonable jury to claim it in their favor. I was asking why doesn't this evidence do that? There are contradictory statements in the record, and I dispute the claimants. What's contradictory here? So within the record, the claimants have made different statements about how that money ended up in Peter Rodriguez's backpack. At one point, which is cited at paragraph 14 of our complaint, they said that they themselves deposited the money into his backpack without telling him. In their interrogatories, however, they said that they handed the money to him and then later asked him to carry the money back up. That's important because then when Mr. Rodriguez is confronted by law enforcement, he denies not only that there's money in his backpack, but that there's a shopping bag. And so there we have a contradiction within the record that undermines their statement, and that combined with all of these other implausible elements. The most fundamentally implausible element is that you entrust your retirement savings to somebody who is a known drug trafficker and whom you affirmatively distrust to handle your currency. And you do this when you have a viable alternative. You've shown no qualms about carrying that currency, keeping it in a locked filing cabinet, carrying it on a road trip from New York City down to North Carolina. And then instead of taking that currency with you, as you've shown a habit of doing, you entrust it to this very untrustworthy custodian. But why aren't those issues that have to be dealt with at a hearing, not on summary judgment? I mean, it may be the fact that he's had some experience with drug trafficking, that he doesn't want to identify cash because he thinks it's going to be forfeit and this is my mom's cash. They're just going to think what they think when they see people like me traveling and take it away. And that would be lying, and he may be a bad guy, he may be a drug trafficker, but does that speak to their claim? The purpose of a hearing is to observe a witness' demeanor and make that kind of credibility determination. Courts reject non-movement affidavits on summary judgment all the time, and at some level those are credibility determinations. If you look at Scott v. Harris. Courts reject non-movement affidavits on summary judgment all the time? Well, it's certainly not unheard of. If you look at Scott v. Harris, the Jeffries case, this First Circuit case, the 8.1. Scott v. Harris was a case where they looked at a video that everyone could look at. That was a video where the assessment was what was happening in the video. It wasn't a non-movement affidavit. Well, if you look at Matsushita. Matsushita was an expert, and it was an expert who they thought was coming up with an economic theory that was just on the economics implausible. Right, and that is, we would argue that that's what this case is here. In Matsushita, it wasn't. These are not experts. These are fact witnesses. These are people who say we were there, you were not. Whereas the court, when they're looking at a video or the court when they're assessing expert testimony, they have the entirety of what's going to be proffered. There isn't any further credibility to be determined. It's about the content. Whereas these are lay witnesses who were there. It's a very different kind of evidence. Do you have any case on that where there's a lay witness affidavit that's ignored on summary judgment? Well, the $8.4 million case from the First Circuit involves a lay witness who's the party claimant. And that's the people throwing bales of money into the water and saying we really intended to keep it. Right, and it's the government's position. Also, his story had changed completely. Right. I mean, his story had totally changed. And there wasn't a detailed affidavit like there is here. I mean, that would, that evidence, the First Circuit evidence, I was just looking here at our standard. In this circuit, okay, so in this circuit we hold it, you can put aside sworn testimony in three conditions, undermined by other credible evidence, physical impossibility, or evidence of plaintiff committed perjury. All three of those are made in the First Circuit case. But there's nothing, well, I will make a statement. What is there in this record that meets any one of these three requirements? Undermined by other credible evidence, that's number one, physical impossibility, or evidence of plaintiff committed perjury. Those are the three. Well, to take those in order, I think undermined by other evidence. Other credible evidence. All of the record evidence, which is in the government's complaint, supporting the government's theory that this is drug trafficking money, the Peter Rodriguez's drug trafficking money. No, no, no, that's not the issue at this point. That's not the issue at this point. The question at this point, you agreed with me that the proper standard is, has there been an assertion of possession and some evidence of it? That's the standard, not whether this is drug money. That's the merits. So what is there in the record that shows that the appellate testimony is, quote, undermined by other credible evidence? What is that credible evidence that undermines what they've said at this stage? Well, on that point, I think the son's denial of money or a shopping bag in his backpack undermines their contention that they handed him a bag and later asked him. And surely that would be something you'd argue at a factual hearing. But you're saying no reasonable juror, no reasonable juror could credit these women's account given their son's waffling. That's not the only reason why. The court's job is to assess the totality of the circumstances. I don't think that's right at this stage. That's not right at this stage. You keep going to merits. The question here is a very specific summary judgment question. And you've agreed with us that the issue is, is there evidence of possession? There's clearly an assertion. So is there evidence? And you have to, to help us decide this case, you, like us, have to look at this through the summary judgment lens. And that requires, and so far what I've heard is, I haven't heard any, there's no evidence of physical impossibility, right? No evidence of physical impossibility. And there's no evidence of perjury, right? Well, we do have inconsistent statements by the claimants. But no, but is there evidence that that's perjury testimony? These are two different factual system situations that are mutually inconsistent. Well, isn't that what juries, excuse me, that sounds like what juries are for. What juries are for? I mean, in the First Circuit case, there was actually evidence of perjury because his story, you know, first story was, I'm just carrying all this money for somebody else. And by the way, they paid me this money. And then suddenly his story changes. So, you know, not only are they inconsistent, but it's pretty powerful evidence that the guys lie. But here, I don't, is there anything like that here, other than the government has one view of the facts and the appellants have another view of the facts, which to me, again, sounds like a jury question. Your Honor, two points. One, it's a combination of factors. It's the inconsistent statements combined with the utter implausibility of numerous details in their narrative, the combination of which is more unlikely than any one of those occurring in isolation. And as for the jury question, the jury's job is to assess witnesses' demeanor and determine whether or not they are telling the truth. Look at the advisory committee notes to Rule 57. That's what the jury does, right. What renders the claimant's story implausible here is not that they are unreliable people. It's that the story they're telling just doesn't hold together. But, you know, I know we're looking at this de novo, and you agree the district court doesn't make credibility determinations at this stage, right? It's not supposed to do that. Yes. But here, look, he, um, okay. So when the district court rejects the appellant's reason for leaving the money in North Carolina, he says, quote, simply unbelievable. As to the banking habits, he says he's been given, quote, no reason to believe, to believe that she was logistically unequipped to pay for it. And then when he rejected Peter's testimony, quote, simply unbelievable. So, and I agree, we're de novo, but the district court's basis for rejecting most of this was he just didn't believe these people. With respect, the standard on summary judgment is whether a reasonable jury could find in favor of the non-movement. Right. At some level, that is a statement of no reasonable jury could believe what they're saying. That's a kind of credibility determination. But let's go back, go back to the standards. What we have here is admissible evidence. Namely, there's sworn answers to interrogatories which tell a story, which is, A, evidence of possession. Now, the only way that summary judgment that can be rejected is based on the standards you and I have been talking about. And the only thing I've heard from you so far, and correct me if this isn't right, is that there's some inconsistencies. Right? There's nothing else that I've heard. Your Honor, I think... Inconsistencies in their own testimony. I think it's a combination of all of these factors. It's the inconsistencies combined with the implausibility combined with the lack of coming forward with more persuasive evidence, like the Supreme Court in Massachusetts... But what's the evidence of implausibility? In the First Circuit case, there was evidence of implausibility. The money was sinking. I mean... It was sinking. It wasn't... It had sunk. It was impossible for him to go back and get the money. I don't see anything like that here. Your Honor, I think the decision to entrust your retirement savings, when you have no reason to do so, into a known drug trafficker whom you affirmatively, in sworn statements, feared that he would steal some of that money if he knew about it, that is totally implausible. And the District Court got that right. But no reasonable jury could hear that and say, that makes sense to me. Okay. All right. I'm done. Anything for a moment of silence? All right. We'll take the case under advisement.
judges: Rogers, Tatel, Pillard